### JAMES v. HAVEN & CLEMENT.

(Circuit Court of Appeals, Fifth Circuit. March 21, 1911.)

No. 2,058.

1. GAMING (§ 49*)—WAGERING CONTRACTS—PURCHASES AND SALES ON EXCHANGE—EVIDENCE.

In an action by brokers against a customer to recover advances made on account of purchases and sales of cotton on the New York Cotton Exchange for future delivery, the rules of the exchange imposing obligations on the parties to deliver and receive actual cotton on such contracts are not conclusive that the purchases and sales in question were not void as wagering contracts, as between the parties to the suit, where such rules also permitted the contracts to be "rung out" or settled by setting off one against another, but the rules are material only as throwing light on the actual understanding and agreement between brokers and customer with respect to the nature of the transactions.

[Ed. Note.—For other cases, see Gaming, Dec. Dig. § 49.*]

2. GAMING (§ 50*)—WAGERING CONTRACTS—ACTION—INSTRUCTIONS.

In an action by brokers against a customer to recover for advances, where the defense was that the advances were made on contracts for the purchase and sale of cotton for future delivery on margin, with the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

understanding between plaintiffs and defendant that they were purely speculative, and that no actual sales or purchases were intended or made, and there was evidence in support of such defense, it was error to refuse instructions that such contracts, if proved to be of such character, were void, and plaintiffs could not recover thereon.

[Ed. Note.—For other cases, see Gaming. Dec. Dig. § 50.*]

3. CONTRACTS (§ 140*)—CONSIDERATION—PROMISE TO PAY ILLEGAL DEMAND.

A promise to pay a demand arising out of a wagering contract which is illegal is not binding.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 713, 718; Dec. Dig. § 140.*]

4. GAMING (§ 50*)—WAGERING CONTRACTS—ACTION—INSTRUCTIONS.

In an action in Georgia by brokers against a customer to recover advances made on purchases and sales of cotton on the New York Cotton Exchange. where the defense was that the transactions were wagering contracts and so understood by the parties, and there was substantial evidence tending to support such defense, it was the duty of the court to charge the jury fully on such issue defining wagering contracts, and calling their attention to Civ. Code Ga. 1895, § 3668, which declares such contracts against public policy, and not enforceable.

[Ed. Note.—For other cases, see Gaming, Dec. Dig. § 50.*

Sales or purchases under agreements for settlement of differences between contract price and market price as wagering contracts, see note to Ware v. Pearsons, 98 C. C. A. 368.]

In Error to the Circuit Court of the United States for the Northern District of Georgia.

Action at law by Haven & Clement against D. W. James. Judgment for plaintiff (172 Fed. 250), and defendant brings error. Reversed.

Victor Lamar Smith and Alex. W. Smith, for plaintiff in error.
H. N. Randolph and Spencer R. Atkinson, for defendant in error.

Before PARDEE and SHELBY, Circuit Judges, and TOULMIN, District Judge.

PARDEE, Circuit Judge. In substance and effect this suit is one brought to recover specific sums of money paid out by the plaintiffs, Haven & Clement, as agents and brokers for the defendant, James, in purchasing and selling cotton futures; and the defense is that all the transactions for which plaintiffs paid out money were by intention and understanding of the parties, and in fact, gambling transactions; that is to say, only wagers depending upon the fluctuations of futures and the variations of the prices thereof upon the New York Cotton Exchange, with the understanding and intent of both parties that all such wagers should be lost or won according to such fluctuations in the price of futures in the New York Cotton Exchange. and, incidental to such defense, that all transactions in the New York Cotton Exchange for the purchase and sale of cotton for future delivery were under the technical rules of the Exchange providing for "ringing out" and substituting contracts by the brokers without the knowledge of principals, and in the delays and technical notices and other formalities thrown in the way of any actual delivery, were, in fact, wagering transactions.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

As to this incidental defense, we notice that, under the evidence admitted on the trial of the case (all of which is found in the transcript), the particular transactions wherein Haven & Clement claim that they purchased and sold cotton futures for the account of James for which they paid out moneys and now ask judgment were under the rules of the Exchange and otherwise so "rung out," substituted, arranged, and settled that the interests of no other or third parties are involved; and the validity of the transactions must stand or fall according to the actual agreements and intentions of the parties to this suit without reference to the character and manner of the business carried on in the New York Cotton Exchange further than it is useful in throwing light upon the actual understanding and agreements between Haven & Clement on the one side and James on the other.

Under this view of the issues of the case, we do not find it necessary to particularly consider the first six assignments of error, which complain of prejudicial rulings on the pleadings, as by the pleadings neither party seems to have been at all restricted or limited in the introduction of evidence.

Nor do we find it necessary to consider assignments of error seventh to sixteenth, inclusive, because they relate to the admission and rejection of evidence in relation to the rules of the New York Cotton Exchange and the transactions thereunder which throw no particular light on the main issue in the case, and reversible error cannot be predicated thereon.

The seventeenth assignment complains of the refusal to permit James to answer this question, "What was your intention with reference to the delivery or the receipt of any actual cotton?" counsel at the time informing the court that:

"The witness would swear in answer to said question that he had no intention whatever of delivering or receiving any cotton under any contract between himself and plaintiffs, but that he was playing the cotton market on margins purely, and that he so advised the agents of the plaintiffs who solicited and procured the business for the plaintiffs."

If there be any error in this ruling, it is cured by the fact that the evidence sought by the question was theretofore admitted to the full extent by the same witness and without objection.

The eighteenth assignment of error has little merit, and, besides the particular statement admitted, was otherwise substantially testified to by the same witness.

The bill of exceptions shows that prior to the charge of the court counsel for the defendant requested the court to give the jury the following instruction, to wit:

"I charge you that speculating or wagering contracts are void, and a broker or commission merchant cannot recover for advancement made on account of customer on account of such contracts. If there was no intention of buying or selling cotton, but the contract was only speculative in the present case, there can be no recovery,"

—and that the court declined to give the said request to the jury. Also, that counsel for the defendant requested the court to charge the jury as follows:

"I charge you further, gentlemen, that no rights can arise in favor of either party to a contract of agency where the agency was created for an illegal purpose. If the plaintiffs and defendant contracted one with the other and the purpose of the contract was to play the market in cotton futures, the agency was illegal, and neither party would have the right to sue the other for losses or profits growing out of such agency,"

—which also was refused.

In each the trial judge certifies that "the same is not covered by any portion of the charge to the jury."

These specially requested charges seem to be sound in law, and their application to the case in hand is beyond question. They certainly were not in unambiguous terms given to the jury, and it seems with the mass of evidence in the case, mainly devoted to the collateral, but not controlling, issue, involving the character of the rules and proceedings of the New York Cotton Exchange, these or similar distinct instructions bearing on the main issue in the case should have been given to the jury. The bill of exceptions also shows that prior to the charge the counsel for the defendant requested the court to give the jury the following instructions, to wit:

"I charge you, further, that, where a claim is based upon an immoral, illegal, or wagering contract, it cannot become the basis of a recovery in a court of law. Such contracts are outlawed,"

—which the court declined to give, and the judge certifies the same is not covered by any portion of the special charge to the jury.

Counsel for the defendant in error contend that this requested charge is defective in not pointing out that an illegal wagering contract must be mutual, and that, notwithstanding the judge's certificate to the contrary, the substance of it is covered by the judge's charge on the subject. This contention is so far well-founded that reversible error cannot be predicated upon the ruling. The requested charge is, however, significant, in that it again calls the trial judge's attention to the real issue in the case.

The bill of exceptions further shows that prior to the charge of the court counsel for the defendant requested the court in writing to charge the jury as follows:

"I charge you further, gentlemen, that, even if it should be true that the defendant promised to pay this claim, yet if the claim arose by reason of a wagering, illegal, or immoral contract, the promise of payment would not be binding."

The defense was that the transactions insisted upon by the plaintiffs as entitling them to recover were wagering and illegal. The plaintiffs adduced evidence tending to show a promise on the part of defendant to pay the amount claimed.

The instruction seems to be good in law, and, as it was applicable to the case, we are of opinion that it was prejudicial error to refuse it because, under the case as presented by the transcript, we cannot say that the evidence given of the defendant's promise to pay was not a controlling factor with the jury in reaching the verdict rendered.

The twenty-fourth assignment of error is as follows:

"Because, as defendant insists, the court erred in failing to charge the jury as he during the trial stated he would, that no cotton was delivered under the 'contracts' relied on by plaintiffs, this being the meaning of the court when he made the following announcement: 'I shall instruct the jury that no cotton passed between them on the dates.' No such charge was given, nor any charge similar thereto. No opportunity was given the defendant's counsel, by the court, to except to the charge as given, on account of same not containing the matter above set forth. Defendant's counsel, at the conclusion of the court's charge, and before the jury retired, made an effort to except thereto. on this and the other grounds stated, stating, 'We desire to except'— but at that point the court interrupted the counsel by rising and leaving the bench and saying, 'I am not going to give any of the requests on either side. You can each have exceptions,' and immediately leaving the courtroom; while at the same time the jury was taken out and counsel left alone in the courtroom. Such charge should have been given, and was pertinent and legal, the undisputed evidence supporting the same."

This assignment and the other following assignments in the case relating to exceptions to the charge of the court as given and to refusals to charge as requested, although acquiesced in by counsel as based upon actual rulings of the court below, are not predicated upon matters appearing of record, not being shown by bill of exceptions allowed and signed by the trial judge; and, of course, under well-settled principles, none of them are within the cognizance of this court on this writ of error.

The charge of the trial judge is before us because it is incorporated in the bill of exceptions duly allowed and signed. As heretofore pointed out in discussing the pleadings, and also in considering the nineteenth, twentieth, twenty-first, and twenty-third assignments of error, the controlling issue in the case was whether or not the amounts sued for by the plaintiffs below were for moneys advanced at the request and for the benefit of the defendant on wagering contracts. The transcript shows that there was evidence offered and admitted tending to show that they were illegal wagering contracts within the knowledge and intent of both parties, and also that there was a large mass of all kinds of evidence bearing upon the collateral issue in respect to the character of dealings upon the New York Cotton Exchange, and some bearing on other minor issues. Under these circumstances, and to the end that the jury might correctly apply the evidence, it was incumbent upon the trial judge to clearly and specifically instruct the jury on the law bearing on the main and controlling issue. The charge thereon was as follows:

"It is next claimed by the defendant that the evidence shows that Mr. James and the plaintiff's representative, Mr. Tate, had an express understanding that this arrangement made by Mr. James with the plaintiff firm was a mere wagering arrangement, and that both parties so understood it. If what he says about that—he told you about that on the stand—that there was to be no delivery of cotton, that is, it was simply taking—I do not remember the exact expression he used, a 'flier,' or something like that, but you will remember what he said, and that Mr. Tate so understood, that he told Mr. Tate that. And you heard what Mr. Tate said. He denied it. If there was an agreement made between Mr. Tate, and Mr. James and if Mr. Tate was to do the business as he described it, and if he had authority to make this sort of an agreement, of course, these contracts would fail and could not be enforced at all. If the arrangement Tate had with James was that it was

to be a mere wagering contract, and no delivery contemplated at all, the contracts could not be sustained. That is for you to say. But my understanding of Mr. James was upon the line indicated by me heretofore that Mr. James wanted Mr. Tate to understand that: 'This thing I am to do with you has nothing to do with my business at Blakely. It is entirely separate and distinct.' Of course, he may have intended it differently, but that is the impression I got. If you understood it differently, and if you believe they had the understanding here claimed by the defendant and his counsel, it would render these contracts invalid."

It is contended that this is involved and argumentative, and does not sufficiently point out the importance of the issue presented, although it is admitted that its real meaning is that, if the jury found that the arrangement between the parties was understood by both of them to be a mere "wagering" contract, plaintiffs could not recover. Certain it is that the charge does not refer to section 3668 of the Code of 1895 of Georgia, which controls in suits in that state on wagering contracts, and declares such contracts to be against the policy of the law and not to be enforced, nor does it otherwise advise the jury as to what are wagering contracts and the public policy relating thereto. The charge deals with the issue as though there was no other evidence thereon than that found in the conversations between Tate, the plaintiff's agent, and the defendant, James, while the bill of exceptions shows the course of dealing between the parties which throws much light on the subject, and shows other pointed facts and circumstances directly bearing on the issue and tending to show mutuality in the understanding that no actual delivery of cotton was contemplated.

Of necessity we have been compelled to read much of the evidence which includes many telegrams and letters passing between the parties, and we cannot resist the conclusion that from James' alleged notice to the agent Tate, and his telegrams and letters to the plaintiffs, and the course of dealing pursued by the parties and other matters shown, the jury might well have found that James did not contemplate actual delivery of any cotton on the future contracts bought or sold for him by the plaintiffs, and only intended wagering or gambling on the fluctuations of prices of cotton futures, expecting to settle by the receipt or payment of differences, and that the plaintiffs were well advised thereof and well understood that in buying and selling for James' account no delivery was to be made or expected to be made, even if third parties should become interested in the future contracts entered into by them on James' account.

Taking this view of the evidence, we are of opinion that the trial judge should have advised the jury in specific terms as to the public policy denying recovery on wagering contracts, defining the same, and also as to the right of recovery where parties willingly advance moneys to pay such contracts, and that on his failure to do so, coupled with his refusal of special charges hereinbefore considered, such reversible error supervened that a new trial should be granted.

The judgment of the Circuit Court is reversed, and the cause is remanded, with instructions to award a new trial.