<hr />

MURPHEY v. SPRINGS & CO.

(Circuit Court of Appeals, Fifth Circuit. November 12, 1912.)

No. 2,321.

ACCOUNT STATED, (§ 8*)—ACTION—DEFENSE OF ILLEGALITY OF TRANSACTION.
    The fact that an account had been stated, and that defendant promised to pay it, does not deprive him of the right, in an action at law thereon in a federal court, to defend on the ground that the account was based on an illegal or wagering transaction.

    [Ed. Note.—For other cases, see Account Stated, Cent. Dig. §§ 50–56; Dec. Dig. § 8;* Account, Cent. Dig. §§ 137–142.]

In Error to the Circuit Court of the United States for the Southern District of Georgia; Emory Speer, Judge.

Action at law by Springs & Co. against George S. Murphey. Judgment for plaintiffs, and defendant brings error. Reversed.

Springs & Co., cotton brokers of New York, sued George S. Murphey, of Augusta, Ga.; the declaration containing three counts. The first count claimed $375 for alleged losses by the plaintiff, incurred in selling by Murphey's direction 50,000 pounds of "January ribs" in the Chicago Board of Trade; and the second count claimed $14,050, losses alleged to have been sustained in buying and selling cotton or cotton futures on the New York Cotton Exchange. The third count—the one on which the trial court rendered judgment for the plaintiffs below—was on stated account between the parties. It alleged, in substance, that on the 20th day of January, 1910, an account was stated between the plaintiffs and the defendant of the said sales and purchases executed by plaintiffs for the defendant upon the Chicago Board of Trade and upon the New York Cotton Exchange, subject to the rules and regulations of the said Board of Trade and of the said Cotton Exchange, a copy of which is annexed to the petition; that upon such statement a balance of $14,055 was found to be due to the plaintiffs from the defendant; that the defendant agreed to said statement, and promised to pay the same, but no part thereof has been paid, although payment has been duly demanded; and there is now due and owing from the defendant to the plaintiffs the sum of $14,055.

The defendant set up in defense to each count, among other defenses not material to state, that the transactions described were not real purchases and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

sales of cotton or ribs, but that in fact no cotton or ribs were to be bought or sold or delivered; that the contracts were mere speculations or wagering agreements as to the varying prices of the commodities. But the case here depends on the ruling of the court in reference to issues tendered on the third count, and attention must be specially given to the answer to that count.

The answer to the third count, describing the dealings between the parties on which the alleged stated account is based, alleges that it was agreed that there would be no contract made calling for the sale or delivery of the actual cotton, and that he (Murphey) would never be asked to take a bale of cotton, and that if he (Murphey) allowed him (Gardner) to conduct the operations, Murphey simply furnishing such money as he desired and naming the amount of cotton, all would be well; that he would make money and be treated fair; that he (Gardner) represented Springs & Co., plaintiffs, and Murphey could safely rely upon these assurances, to wit, that the transaction was purely speculation on margin, to be adjusted by the differences in the market between him (Murphey) on one side, and Gardner and Springs & Co. on the other; that the agreement between the plaintiffs and the defendant to transact a cotton future business, as stated, was made in Georgia, and was to be settled in Georgia, according to the differences in value of cotton futures as reported by telegraph from New York; that plaintiffs bought no actual cotton nor contracts calling therefor in the name of this defendant, and none were tendered to him. But the transactions authorized to be entered into for the account of the defendant were speculations in cotton futures upon margins, to be settled according to the differences in the market, and what was done was a cotton future speculation.

The defendant having tendered the issue, in brief, that the account stated described in the third count was based on an illegal or gambling or wagering consideration, the following proceedings occurred:

The Court: "I am very clear in my own mind that the defense which is sought to be set up in this case cannot be interposed to a common-law action, to which the defendant has answered and admitted that he promised to pay the amount sued for if he was given time. If he had relied originally upon the ground that it was a speculative and wagering contract, and that therefore the amount was neither just nor due, why I think we could have gone on at common law, and heard all of the facts, and determined whether or not it was such a wagering contract as would justify him in making this defense. Nobody else has the right to make this defense but himself. It is true a wagering contract is against public policy; but a man who deals in cotton futures can pay the balance ascertained to be true upon a comparison of accounts between himself and a member of the Cotton Exchange with whom he dealt. There was such a comparison of accounts. There is no question about that. He admitted it to be correct, and stated in his answer that he promised to pay if he was given time. Well, he was given 40 days, and did not pay it, and the suit was brought. Now, the contention that these New York people beguiled him, that the man he thought was acting for him was acting for them, that they were guilty of all kinds of covin and deceit in bringing about this disastrous result to his venture, are matters, in my judgment, of equitable defense, which cannot be heard in reply to an action at law in a court of the United States. It may be possible that the court is in error on this; but it is better for the court to express its convictions and decide the case, and, if error is committed, allow it to be corrected in one way or another as soon as that possibly can be done. I am very clear in my own mind about this. * * * So I shall have to disallow his plea of set-off, and, taking the whole case together, I am obliged, under the agreement of submission, to grant a judgment for the plaintiffs for the amount sued for."

Mr. Miller: "Do I understand your honor strikes the plea of gambling consideration, and will not hear any evidence on that point?"

The Court: "Yes."

* * * * * * * * * * *

Mr. Miller: "I understand, therefore, that your honor strikes and refuses the plea of set-off as now of file?"

The Court: "Yes."

Mr. Miller: "And also strikes our defense of a gambling contract?"

The Court: "I hold that your defense as you have set it up is illegal, or an equitable defense to an action at law."

Exceptions were duly taken to these rulings of the court, and they are here assigned as error.

The court, having struck the part of the answer referred to, entered judgment for the plaintiffs below on the third count for $14,055.

William K. Miller, of Augusta, Ga. (Herbert D. Mason, on the brief), for plaintiff in error.

William H. Barrett, of Augusta, Ga., for defendants in error.

Before PARDEE and SHELBY, Circuit Judges, and MEEK, District Judge.

SHELBY, Circuit Judge (after stating the facts as above). In England it was held that contracts, although wagers, were not void at common law; but in this country it has been generally held that all wagering contracts are illegal and void as against public policy. Irwin v. Williar, 110 U. S. 499, 4 Sup. Ct. 160, 28 L. Ed. 225. The rule that such contracts are void is reinforced and affirmed by the Georgia statutes. Georgia Civil Code 1895, § 3668; Acts of Georgia (1906) p. 95. A contract for the sale of goods to be delivered at a future day, in the absence of a statute to the contrary, is valid, although the seller has not the goods; but such contract is only valid when the parties really intend and agree that the goods are to be delivered by the seller and the price paid by the buyer. If, under the guise of such a contract, the real intent be merely to speculate on the rise and fall of prices, and the goods are not to be delivered, but one party is to pay the other the difference between the contract price and the market price at the date fixed for executing the contract, then the whole contract is a wager, and is null and void. Embrey v. Jemison, 131 U. S. 336, 9 Sup. Ct. 776, 33 L. Ed. 172. When an action is brought at law to enforce such illegal contract, unquestionably the defendant may set up the illegality in a plea or answer.

The trial court, it seems, recognized the fact that wagering contracts and contracts commonly known as dealing in futures are illegal and void by the laws of Georgia, for it was announced that a defense based on the illegality of such contracts would have been sustained, if it had been promptly presented. The court was of the opinion, however, that if an account was stated on such transactions, although the transactions were, in themselves, illegal, and the defendant had promised to pay the account, he could not then defend at law on the ground of such illegality, but that it would be necessary to present the defense in equity.

It is true that, under the federal practice, an equitable defense is not permitted at law; for example, a defense that required to sustain it the rescission of a contract, the parties to which were not before the court (Lantry v. Wallace, 182 U. S. 536, 21 Sup. Ct. 878, 45 L. Ed. 1218), or a defense alleging fraud, seeking to vacate a sale, and praying for an accounting (Northern Pacific Railroad v. Paine, 119 U. S. 561, 7 Sup. Ct. 323, 30 L. Ed. 513), or a defense that involved the settlement of partnership accounts, all the partners not being parties

to the suit at law (Burnes v. Scott, 117 U. S. 582, 586, 6 Sup. Ct. 865, 29 L. Ed. 991); and in similar cases.

We think, however, there is nothing in the fact that an account was stated, nor in the fact that the defendant promised to pay it, that could deprive him of the right to make the defense of illegality or wagering contract at law. The new promise could not wipe out the original taint of illegality. Dunbar v. Johnson, 108 Mass. 519. Such a plea is not an equitable defense, but presents a legal bar to the action. In James v. Haven & Clement, 185 Fed. 692, 107 C. C. A. 640, which was an action at law, it was held that a promise to pay a demand arising out of a wagering contract, which is illegal, is not binding. An answer or a replication in a case at law ordinarily may set up fraud or other illegality. Wagner v. National Life Insurance Co., 90 Fed. 395, 33 C. C. A. 121. In an action on a promissory note, fraud in obtaining the note may be pleaded at law. Marshall v. Hubbard, 117 U. S. 415, 418, 6 Sup. Ct. 806, 29 L. Ed. 919; Hume v. United States, 132 U. S. 406, 10 Sup. Ct. 134, 33 L. Ed. 393. In an action for goods sold, a defense may be made at law, based on the fraudulent representations of the seller as to the quality of the goods. Dushane v. Benedict, 120 U. S. 630, 7 Sup. Ct. 696, 30 L. Ed. 810.

We are of the opinion that there is nothing in the fact that an account has been stated, and that the defendant has promised to pay it, that would deprive him of the right in an action at law to defend on the ground that the account was based on an illegal or wagering transaction.

The trial court erred in striking the answer from the files and in refusing to receive evidence to sustain it.

Reversed.