## HAVEN & CLEMENTS v. JAMES.

(District Court, N. D. Georgia. June 21, 1913.)

GAMING (§ 50*)—WAGERING CONTRACTS—ACTION BY BROKERS—INSTRUCTIONS.
Instructions considered in an action by brokers to recover from a customer for money advanced on a contract made on the exchange for the purchase of cotton for future delivery in which the defense was that the contract was unlawful as a wagering contract, and *held* to fairly submit the questions in issue.

[Ed. Note.—For other cases, see Gaming, Cent. Dig. §§ 103–107; Dec. Dig. § 50.*]

At Law. Action by Haven & Clements against D. W. James. On motion by defendant for new trial. Motion denied.

For former opinion, see 185 Fed. 692, 107 C. C. A. 640.

Brown & Randolph, Parker & Scott, and Spencer Atkinson, all of Atlanta, Ga., for plaintiff.

Smith, Hammond & Smith, of Atlanta, Ga., and Charlton Battle, of Columbus, Ga., for defendant.

NEWMAN, District Judge. The main argument of counsel for the defendant on this motion for a new trial was based on the fact that the court here called the attention of the jury to certain language in a decision by the Supreme Court of the United States in Board of Trade v. Christie Grain & Stock Co., 198 U. S. 236, 25 Sup. Ct. 637, 49 L. Ed. 1031. The quotation was really taken from the language embodied by the Appellate Division of the Supreme Court of New York in the opinion in the case of Springs et al. v. James, 137 App. Div. 110, the quotation being on page 121, 121 N. Y. Supp. 1054. The court stated in the charge here, after making this quotation:

"That is to say, I understand this method of doing business to be treated by the courts, both the Supreme Court of the United States and the Supreme Court of New York, as an entirely legitimate method of transacting this part of the business."

The Supreme Court of New York, in the same opinion, quoted also to precisely the same effect from the case of Clews v. Jamieson, 182 U. S. 461, 21 Sup. Ct. 845, 45 L. Ed. 1183.

The decision by the Appellate Division of the Supreme Court of New York just referred to was affirmed by the Court of Appeals of New York, 202 N. Y. 603, 96 N. E. 1131.

Examining the language to which counsel calls attention in Board of Trade v. Christie Grain and Stock Co., supra, on page 250 of 198 U. S., on page 639 of 25 Sup. Ct. (49 L. Ed. 1031), as follows:

"We speak only of the contracts made in the pits, because in them the members are principals. The subsidiary rights of their employers where the members buy as brokers we think it unnecessary to discuss."

—I am unable to see that this has any effect whatever on the matter involved here. If the contracts between the principals were legal—that is, if Haven & Clements had contracts that were valid and binding

as against them with other members of the Exchange, and paid out money, as they did, because of their liability on such contracts—it would be singular indeed if they could not recover the same from their principal, Mr. James.

In this case the court endeavored to instruct the jury in accordance with the suggestion of the Circuit Court of Appeals in the opinion rendered in this case (James v. Haven & Clements, 185 Fed. 692, 107 C. C. A. 640) as follows:

"Of necessity we have been compelled to read much of the evidence which includes many telegrams and letters passing between the parties, and we cannot resist the conclusion that from James' alleged notice to the agent Tate, and his telegrams and letters to the plaintiffs, and the course of dealing pursued by the parties and other matters shown, the jury might well have found that James did not contemplate actual delivery of any cotton on the future contracts bought or sold for him by the plaintiffs, and only intended wagering or gambling on the fluctuations of prices of cotton futures, expecting to settle by the receipt or payment of differences, and that the plaintiffs were well advised thereof and well understood that in buying and selling for James' account no delivery was to be made or expected to be made, even if third parties should become interested in the future contracts entered into by them on James' account."

The court, on the trial now being reviewed, said this:

"Now another defense in this case on the part of the defendant is that this was a wagering contract pure and simple. That is a gambling transaction, without any intention whatever, on the part of the defendant, to deliver cotton when sold or to receive cotton when bought, and that the plaintiff understood this to be his intention. If the jury find that James did not contemplate the delivery of any cotton on the future contracts bought and sold for him by the plaintiffs, and only intended to wager or gamble on the fluctuations in the price of cotton futures, expecting to settle by the receipt or payment of differences, and that the plaintiffs were advised thereof and well understood that in buying and selling for James' account no delivery was to be made or expected by him even if third parties should become interested in the future contracts entered into by them on James' account, then this arrangement would be one in which recovery could not be had for money advanced in this connection and to carry out these purchases and sales."

The Circuit Court of Appeals also suggested, in their opinion, that the jury should have been instructed in accordance with the statutes of Georgia, in the following language:

"Certain it is that the charge does not refer to section 3668 of the Code of 1895 of Georgia, which controls in suits in that state on wagering contracts, and declares such contracts to be against the policy of the law and not to be enforced, nor does it otherwise advise the jury as to what are wagering contracts and the public policy relating thereto."

In line with this suggestion the court, on the trial here, read to the jury section 4253 of the Code of Georgia of 1910 (being section 3668 of the Code of 1895 of Georgia) concerning wagering contracts, as follows:

"A contract which is against the policy of the law cannot be enforced; such are contracts tending to corrupt legislation or the judiciary, contracts in general in restraint of trade, contracts to evade or oppose the revenue laws of another country, wagering contracts, contracts of maintenance or champerty."

The court then further instructed the jury on this subject as follows:

" 'Wagering contracts' you understand, betting contracts, and if this in the present case was one where there was no actual purchase or sale intended, it is simply a bet on the rise or fall of cotton."

And further along in the charge as follows:

"A wagering contract in this case would be one, of course, such as I have just described, where it was simply betting on the rise or fall of the market and not a legitimate transaction under the law and under the rules of the New York Cotton Exchange."

The other portions of the charge, while they may be excepted to, have not been stressed in the argument here.

I am satisfied that the instructions given to the jury were fair in every way and that they embodied the law of the case. This made a question for the jury to decide, and the evidence was sufficient, in the opinion of the court, to justify the verdict reached.

The motion for a new trial is overruled.