## Cash v. Bank of Lowes, et al.

(Decided November 21, 1922.)

Appeal from Graves Circuit Court.

1. Insane Persons—Contracts—Mental Capacity.—A contract made in good faith by one in ignorance of the imbecility of the other contracting party may be sustained, especially if the transaction is one to the advantage of the imbecile.

2. Insane Persons—Contracts.—A contract made with a non compos mentis after inquest and, judgment finding him to be such is absolutely void.

3. Insane Persons—Contracts—Rescission.—The rule refusing a rescission where the contract was made in good faith before the inquest, does not necessarily prevail if the parties may be placed in statu quo.

J. C. SPEIGHT for appellant.

W. J. WEBB for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

In April, 1920, Mrs. Nellie Hawkins received $2,000.- 60 insurance on the life of her deceased husband. While the insurance was being adjusted and before the money was paid, Mrs. Hawkins and her brother, Noah Wagoner, entered into an agreement with one J. D. Goins for the purchase of a tract of twenty-four acres of land in Graves county at the price of $2,000.00. At the time of the purchase said Wagoner was living upon the tract as a tenant and had moved his sister, Mrs. Hawkins, and her five or six infant children on to the place with him. He owned no property of consequence except four acres of land which he purchased from appellant Cash at the price of $400.00 and which he paid for individually. When the insurance money came, about the 19th of April, 1920, Mrs. Hawkins and some of her friends met the insurance adjuster at the Bank of Lowes in Graves county for the purpose of adjusting the claim and paying some of the creditors of Mrs. Hawkins. Several claims were presented against the estate of the deceased and against Mrs. Hawkins, amounting to $500.00 or $600.00, which were paid by check on the Bank of Lowes. Mrs. Hawkins then wanted to take the balance of the money with her but was dissuaded by the cashier and the insurance adjuster, who told her it was dangerous to have such a large amount of money in her possession, and induced her to leave it in the bank. She and her brother and other friends went immediately from the Bank of Lowes to the Bank of Fancy Farm some miles away, where the deed for the twenty-four acres of land had been escrowed awaiting her check for $1,000.00 and the execution of two notes for $500.00 each. Arriving at the Bank of Fancy Farm Mrs. Hawkins gave to appellant, R. L. Cash, to whom the money was going for the land, a check for $1,000.00, and another check for $77.50

to pay for some hay and corn, and executed and delivered to Cash two notes of $500.00 each, due in one and two years, as balance of the purchase price of the land. With her in the execution of the notes was her brother, Noah Wagoner, who signed the notes as principal. She received and accepted the deed for the land and immediately had it recorded. She and her brother, Noah Wagoner, were grantees therein. It seemed then to have been the purpose of Mrs. Hawkins and her brother to use the farm jointly as a home. The two checks, one for $1,000.00 and one for $77.50, made to appellant Cash, were presented to the Bank of Lowes for payment on the same day they were issued, but this institution refused to honor or pay the said checks on the ground that Mrs. Hawkins was of unsound mind and incapable of transacting business. In about two days thereafter the officers of the Bank of Lowes carried Mrs. Hawkins before the Graves county court for an inquest and she was adjudged *non compos mentis*, and a committee was appointed to take charge of her business affairs. Within a few days thereafter this case was brought by appellant Cash against the Bank of Lowes to recover the amount of the two checks, $1,077.50, alleging that at the time of the giving of the checks Mrs. Hawkins had to her credit in said bank a sum more than sufficient to pay the said two checks, and that she had said sum in said bank at the time of the presentation of the said checks to the bank for payment and that the bank had wrongfully refused to pay the checks. The Bank of Lowes and the committee of Nellie Hawkins filed an answer and cross petition in which it is properly pleaded that Nellie Hawkins was a person of unsound mind both at the time of giving the checks and the presentation of same for payment, that these facts were known to Cash at the time and long before he received said checks.

It is further charged in the answer that the land for which Nellie Hawkins agreed to give $2,000.00 was worth less than $1,000.00; that appellant Cash, Noah Wagoner and Goins had entered into a conspiracy for the purpose of obtaining from Nellie Hawkins the $2,000.00 which she was about to receive upon her insurance and that in pursuance to said conspiracy to defraud her they had sold her this tract of land at a price far beyond its worth, and prayed that the answer be made a cross petition against Noah Wagoner and process is-

sue against him; that the checks be cancelled and ordered not paid and that the two $500.00 notes be cancelled and annulled and that said Nellie Hawkins be adjudged not liable thereon and that the deed for the land made to Nellie Hawkins be cancelled and annulled and set aside, and for all proper relief.

Issue being joined a considerable amount of evidence was taken upon the question of the mental status of Mrs. Hawkins. A great many witnesses testified that she was of sound mind or at least of reasonably good mind, while others testified that she had neither memory nor reason, and was incapable of comprehending or understanding the nature of the transaction through which she became the grantee of the land and signed and issued the two checks. An issue out of chancery was granted and the question of her sanity submitted to a jury, which returned a verdict finding her mentally incapable of entering into such contractual relation.

The transaction was not void but merely voidable, for we have several times written that a contract made in good faith by one in ignorance of the imbecility of the other contracting party may be sustained, especially if the transaction is one to the advantage of the imbecile. Johnson's Committee v. Mitchell, 146 Ky. 382. But we have further held that a contract made with a *non compos mentis* after inquest and judgment finding him to be such is absolutely void. (Smith's Committee v. Forsythe, 90 S. W. 1075; 28 R. 7034.)

The rule refusing a rescission where the contract was made in good faith before inquest does not necessarily prevail if the parties may be placed *in statu quo*. Garland v. Rice, 4 Ky. L. R. 254; Arnett's Committee v. Owens, 65 S. W. 151; Logan v. Varnsdall, 27 R. 824; Dowell v. Dowell's Admr., 137 Ky. 177; Campbell v. Kerrick, 142 Ky. 281.

Inasmuch as appellant, R. L. Cash, has a purchase money lien against the real estate which will save him harmless the parties may be placed *in statu quo*. No one a party to this record will suffer by a cancellation of the checks, notes and deed, as directed by the judgment below.

While the instructions given by the trial court to the jury were incorrect in that the whole case was submit-

ted, whereas only the mental status of Mrs. Hawkins alone should have been submitted, this was not prejudicial error under the facts in this case.

It is the special province of courts of equity to take care of the interests of infants, *non compos mentis* and imbecile persons, and inasmuch as the chancellor granted an issue out of chancery and allowed a jury to hear the facts and determine the condition of mind of Mrs. Hawkins, which finding of the jury was adopted by the chancellor, we feel that no substantial error to the prejudice of appellant Cash has been committed, and the judgment is affirmed.

Judgment affirmed.