## Cawby, Committee of Sarah E. Wilson, et al. v. Kurtz, et al.

(Decided May 29, 1925.)

### Appeal from Mercer Circuit Court.

1. Insane Persons—Contracts of Incompetent, Before Adjudication, Merely Voidable.—Contracts of incompetent or person of unsound mind, before he has been adjudged to be so, are not void but merely voidable.

2. Insane Persons—Contract Beneficial to One Later Adjudged Insane and Protecting Her Interests Not Set Aside for Incompetency.—Where aged housekeeper had been devised life interest in farm, and remainderman charged with her support, contract providing for annual payment of rent and payment of debts of estate by remainderman executed to prevent sale of property to pay debts, in which both interests would have been consumed, being beneficial to life tenant and fully protecting her rights, would not be set aside on ground of incompetency, especially where judgment of insanity was not entered until 12 years or more after contract was made.

RODMAN W. KEENON for appellants.

E. H. GAITHER and JOE ROBINSON for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER— Affirming.

Joseph B. Baldwin died in 1903 or 1904, having first made his will which was probated in May, 1904.

He devised to Sarah E. Wilson, his servant and housekeeper, a farm of 121 acres, upon which he lived, for and during her natural life, and in remainder to Hugh M. Kurtz.

The decedent had for several years before his death been blind, and the devise to Sarah E. Wilson is recited in the will to be in consideration of her kindness and faithfulness to him during the long years of her service; and the devise in remainder to Kurtz is recited as being made because he likewise had been kind and attentive in decedent's business affairs and in administering to his daily needs. Testator then requires of Kurtz to see to the wants of Sarah E. Wilson in her old age, and provide her with a home at his house if she so desired, and if not, he was to assist her in managing the farm and in caring for her wants generally. He then says:

> "And upon refusal upon his part to carry out the provisions as herein expressed, the bequest is to be void."

After the death of Baldwin, Sarah E. Wilson did go and live at the home of Kurtz for a while, and thereafter lived for a time in the home of some of his relatives. She was at the date of Baldwin's death about 50 years of age, and while she had been capable of doing the household work and in a general way looking after her domestic duties and caring for the wants of the blind man, she was not in fact a woman of strong mentality, but was capable of doing the ordinary things of life in her sphere.

In 1905 she and Kurtz entered into a contract by which he was to pay for the period of ten years, or during her life, $125.00 per year rent for the property, of which $50.00 was to be paid to her in cash each year, and $75.00 spent in improvements upon the farm. During the latter years of Baldwin's life the place had run down, and was not in fact at any time a very productive farm.

The parties seem to have operated under this contract for some time, when the Wilson woman instituted some sort of an action to set aside the contract between her and Kurtz, and to enforce the payment of a debt which Kurtz owed Baldwin at his death, and which Baldwin had also bequeathed to her in his will. This litigation, however, was in September, 1908, settled by the parties in the form of a written contract, wherein Kurtz rented from Sarah E. Wilson the land for the period of her natural life, at the rate of $75.00 per year, to be paid to her each year. The suit in which the controversy arose between Kurtz and Sarah E. Wilson appears to have been a suit for a settlement of the estate of

Baldwin, and in that suit there were asserted debts, including costs of administration, amounting in the aggregate to something like $1,000.00, and it was apparent that there would be in that action a judgment of sale for the whole tract of land which would have then brought little, if any, more than the amount of the debts and the costs of administration; the result of which, of course, would have been to practically consume the interest not only of the life tenant, but of the remainderman. In this situation the parties each acting under capable advice of reliable and conscientious attorneys entered into the contract of September, 1908, wherein Kurtz not only agreed to pay to the life tenant $75.00 a year rent during her life for the place, but agreed to and did pay off the debt which he owed the estate of Baldwin, and which had been bequeathed to Sarah E. Wilson. He also agreed to assume and pay off each and all the debts and claims against the estate, including two mortgages, one of which had been placed on the farm by Baldwin in his lifetime, and the other by Kurtz and Sarah E. Wilson after his death.

The parties operated under this contract from 1908 until 1920, at which time Sarah E. Wilson, then an aged woman, was adjudged to be insane, and was confined in the state asylum at Lexington.

A committee having been appointed for her, this action was instituted seeking to cancel the devise in remainder to Kurtz because of his alleged failure to comply with the conditions in Baldwin's will, and to have it adjudged that the property belonged to Sarah E. Wilson, and to set aside the contract of 1908 between the parties upon the ground that she was at the time mentally incompetent and without capacity to know and understand its contents.

The answer was a denial of the material allegations of the petition, and in a second paragraph the situation of the parties at the time the contract of 1908 was entered into was set out at length, it being alleged in substance that the farm at that time was not of greater value than $1,000.00 or $1,200.00 and that the parties were confronted with a judgment of sale to settle the debts of Baldwin, whereby not only the life estate devised to Sarah E. Wilson would have been consumed, but the remainder interest devised to Kurtz. That even though

Sarah E. Wilson was at that time of feeble mind or incapable of understanding the purport and effect of the contract with Kurtz, yet she was then represented by a capable and conscientious lawyer who drew the contract, and that her rights therein were fully protected in every respect, and the same was beneficial to her and her rights.

Without going into the mass of testimony on the issue whether Sarah E. Wilson was competent in 1908 to enter into this contract, we have reached the conclusion that then the farm in question was of little more value, if any, than the amount of the debts against it, and that if a judgment of sale had then been entered and enforced, the whole property, and both interests therein, would have been practically consumed. It is apparent, therefore, that as Sarah E. Wilson under the terms of the contract was to receive $75.00 a year during her life, and would have received, except for that contract, practically no future benefit from the devise, it was not only beneficial to her but insured her at least a meager income, without the care of the property, during the remaining years of her life.

It may be admitted that the evidence of the then value of the property was somewhat conflicting; but in as much as it convincingly shows the property was then in a very bad state of repair and had never been particularly productive, it is reasonably certain it would have been practically, if not wholly, consumed in the payment of the debts and cost of administration.

Assuming for the purposes of this opinion that when the contract was entered into Sarah E. Wilson was not capable of understanding its effect, (although the evidence is conflicting on that issue) we find that not only was she represented by an able and capable lawyer, who fully understood the facts and circumstances and who amply guarded her interests in the drawing of the contract, but we find that it was wholly beneficial to her, and that but for its execution her estate in the property would have been destroyed, or nearly so.

The contracts of an incompetent, or even a person of unsound mind, who has not been adjudged to be so, are not void, but only voidable; and the presumption of sanity and competency are generally in existence until a judgment establishing the contrary is entered, and in this case no such judgment was entered until twelve years or more after the contract was made. Elliott on Contracts,

vol. 1, sections 261 and 269; Beach on Contracts, vol. 2, section 1349; Stevens v. Snowden, 7 R. 743; Smith's Committee v. Forsythe, 90 S. W. 1075.

It is clear neither Sarah E. Wilson nor her committee were interested in having the devise in remainder to Kurtz adjudged forfeited; for such a judgment could in no event operate to the advantage of Sarah E. Wilson. A forfeiture would have the effect only to make Baldwin die intestate as to the remainder interest, and at the death of Sarah E. Wilson Baldwin's heirs at law would take the same by descent. This seems to have been recognized by counsel, for the question of forfeiture is not discussed in the briefs.

Judgment affirmed.