**FARMERS BANK & TRUST CO. v. PUBLIC
SERVICE CO. OF INDIANA.
No. 1041.**

District Court, W. D. Kentucky.
Feb. 5, 1936.

Morton K. Yonts and John H. Chandler, both of Louisville, Ky., for plaintiff.

Gordon, Laurent, Ogden & Galphin, of Louisville, Ky., for defendant.

HAMILTON, District Judge.

This case is pending before me on a motion to dismiss under Equity Rule 29 (28 U.S.C.A. following section 723).

On December 3, 1927, Lillian B. Everett, ward of the plaintiff, while a passenger on a train of the defendant, was severely injured in a derailment, and on November 21, 1928, instituted an action in her own name in the Jefferson county, Ky., circuit court, seeking to recover from the defendant $65,000 damages for personal injuries received in the accident. That action was removed to this court, and an answer filed by the defendant. On June 25, 1929, the following order was entered dismissing settled:

"On motion of the parties hereto, it is ordered that this case be and it is hereby dismissed settled at defendant's cost."

On the same date, Lillian B. Everett executed to the defendant the following release:

"Hot Springs, Arkansas.

"This is to acknowledge receipt from Interstate Public Service Company of the sum of Twenty Thousand Dollars ($20,000.00), which is accepted by me in full settlement and satisfaction of any and all claims which I may have against said Company, arising out of an accident in which I received injuries while a passenger on one of the Company's cars on December 3, 1927, near Speeds, Indiana. My claim for damages arising out of that accident is now being asserted in a suit by me against said Company, which suit was originally brought in the Jefferson Circuit Court at Louisville, Kentucky, and was removed by the defendant to the United States District Court for the Western District of Kentucky at Louisville, Kentucky, and is now pending in said latter Court.

"Said suit may now be dismissed settled upon the condition that the defendant pays all of the Court costs.

"This receipt and release is executed in duplicate. Witness my hand this 29 day of June, 1929.

"Lillian B. Everett [Signed]
"Witness: Dewell Jackson [Signed]"

On January 23, 1935, the Nelson county court of Nelson county, Ky., after a hearing duly had, adjudged Lillian B. Everett to be a person of unsound mind and a lunatic, and pursuant to the statutory laws of the commonwealth of Kentucky appointed the Farmers Bank & Trust Company, a corporation incorporated under the laws of the commonwealth of Kentucky and authorized under its charter to act as trustee, a committee for her, and ever since that time the trust company has continued to act as such.

On February 11, 1935, the committee instituted in the Jefferson circuit court, common pleas branch, Fourth Division, this action against the defendant seeking to recover from it $75,000 on identically the same ground as her former action, and for which she had received $20,000 in full settlement. The defendant removed the action to this court, and after it had filed an answer pleading the former action as a bar, the plaintiff filed an amended petition in equity in which it admitted that its ward had instituted the former action and had executed the release heretofore referred to and had received the $20,000. In avoidance thereof it pleaded that Lillian B. Everett was, and had been ever since the accident, an insane person; that her mind, memory, mental faculties, and nervous system were so permanently injured and destroyed that she was incapable of exercising sound or any judgment, or making a rational determination of the contents of any settlement or contract; that she was wholly incapable by reason of her mental condition to know the nature, quality, or effect of any act, and for that reason, the compromise settlement and order entered in the previous action was absolutely void and of no effect.

There was no offer made to return any part of the $20,000 and no allegation of fact as to whether she had any part of the sum in her possession.

It is further alleged that the defendant, its officers, and agents knew, or had reason to suspect, the mental condition of Lillian B. Everett at the time they made the settlement, and knowing that fact, they falsely and fraudulently induced and caused her to release her claim against it. It is

further alleged that the order dismissing the former action settled did not have the force and effect of a judgment, and prayed that the settlement and order of dismissal be held for naught and that it recover the amount prayed for in the original petition.

The defendant has moved to dismiss this action; first, because the plaintiff has not offered to restore the parties to statu quo by returning the $20,000; second, because no fact is set out in the petition constituting false or fraudulent inducement to make the settlement; third, that there is no allegation that plaintiff's ward has sustained any damage; fourth, it is not alleged that counsel for its ward, who consented to the entry of the order of dismissal, lacked authority to act for her; and, fifth, that there is no fact alleged in the petition which would support a judgment holding void the order entered in the former action and the release in compromise executed by plaintiff's ward.

The language of the release in this case is sufficiently broad to cover all damages suffered by the plaintiff's ward in consequence of the derailment and wreckage of the train and to preclude the plaintiff from maintaining this action. Its execution is admitted, and its legal construction as constituting a bar to this action is not denied, but it is argued that it was entered into by plaintiff's ward at a time when she was wholly destitute of reason and without mental capacity to execute any sort of an agreement. It is further contended that the order dismissing settled entered in the former action is a nullity because the mental condition of its ward, at the time of entry, was such that she could not confer authority on her counsel to agree to it.

■ Agreements, compromises, and releases for personal injuries are subject to the rules of construction of contracts generally, and unless ordinary contracts entered into by a lunatic are void, by the same rules, a release or compromise would not be void.

A person non compos mentis ordinarily does not possess mental capacity to make a contract. Until about the year 1330, the common law, without deviation, recognized the right of a party to rely upon and prove his own insanity as a means of avoiding any contract made during his mental incapacity. This right was later limited in decisions rendered during the time of Ed-

ward III and Henry VI, and these decisions came to be regarded as the common law on the subject. Lord Coke stated that no man of full age shall in any plea set up his own insanity as a defense to his acts, as such proceeding would stultify him and hold him up to ridicule, and that if such defense were permitted, it would open up an avenue for fraud and injustice. The jurist held that it was exceedingly easy to counterfeit madness without being detected and that of those who deceitfully pretend to be insane, the far greater number escape detection; and consequently, but for this maxim, the appearance of lunacy would be very frequently put on for the purpose of practicing imposition and fraud.

■ The English common-law rule has been severely criticized by many writers as being contrary to natural justice and the practice of all civilized nations of the world. The doctrine that a person shall not be allowed to stultify himself by setting up such a plea is now exploded, and under modern decisions the right of an alleged insane person to avoid his contracts generally depends upon the degree of his mental incapacity.

In the case of Dexter v. Hall, 82 U.S. (15 Wall.) 9, 28, 21 L.Ed. 73, coming from the state of California, it was held that an insane person, while in such condition, was incapable of executing a contract, deed, power of attorney, or other instrument requiring volition and understanding, and that a power of attorney executed by an insane person, or one of unsound mind, was absolutely void. The court said, in looking at the subject, in light of reason, it is difficult to perceive how one incapable of understanding, and of acting in the ordinary affairs of life, can make an instrument the efficacy of which consists in the fact that it expresses his intention, or, more properly, his mental conclusions. It is said in the opinion that a lunatic has nothing which the law recognizes as a mind, and as a contract requires a meeting of minds, if one of the parties lacks a mind there can be no meeting on the subject.

In the case of Johnson v. Harmon, 94 U.S. (4 Otto) 371, 382, 24 L.Ed. 271, the court held that confirmed insanity which deprives a person of mental capacity to distinguish between right and wrong in respect to the act in question renders the person irresponsible for such an act, though criminal, and disqualifies

him from entering into a contract, or to execute a valid instrument to convey real estate or personal estate. The basis of the opinion is that insanity prevents a meeting of minds necessary to execute an instrument or to do any act requiring mental volition or an exercise of mental power.

In the case of Plaster v. Rigney (C.C. A.) 97 F. 12, the court held void a power of attorney given by a lunatic, and a deed executed pursuant thereto. It would seem that one whose mental faculties were unbalanced, "in whose chambers of thought chaos reigned supreme, confusion worse confounded," would require the court to exercise care that such a person did not fritter away his rights and become a charge on the commonwealth. See the cases of Parker v. Marco (C.C.) 76 F. 510; Edwards v. Davenport (C.C.) 20 F. 756. The case of Kevan v. John Hancock Mutual Life Insurance Company (D.C.) 3 F.Supp. 288, is contrary to the above-cited cases, but I believe Judge Otis, in his opinion, fails to give due weight to Dexter v. Hall. See, also, Levine v. Whitney (D. C.) 9 F.Supp. 161.

■ The Court of Appeals of Kentucky is not in harmony with the rule laid down by the Supreme Court in Dexter v. Hall, supra. Contracts entered into with an insane person, in good faith, without fraud or imposition, for a fair consideration, without notice of mental infirmity, before an adjudication of insanity, and executed in whole or in part, will not be set aside under the decision of the Kentucky Court of Appeals without a restoration of the statu quo. Rusk v. Fenton, 14 Bush, 490, 29 Am.Rep. 413; Dowell v. Dowell's Adm'r, 137 Ky. 167, 125 S.W. 283; Johnson's Committee v. Mitchell, 146 Ky. 382, 142 S.W. 675; Bevins v. Lowe, 159 Ky. 439, 167 S.W. 422; Lexington & Eastern Railway Company v. Napier's Heirs, 160 Ky. 579, 169 S.W. 1017; Kentland Coal & Coke Company v. Keen, 168 Ky. 836, 183 S.W. 247, L.R.A.1916D, 924; Rath's Committee v. Smith, 180 Ky. 326, 202 S.W. 501; Phillips v. Murphy, 186 Ky. 763, 218 S.W. 250; Casebier v. Casebier, 193 Ky. 490, 236 S.W. 966; Cash v. Bank of Lowes, 196 Ky. 570, 245 S.W. 137; Cawby v. Kurtz, 209 Ky. 275, 272 S.W. 746; McVeagh v. Hicks, 211 Ky. 284, 277 S.W. 280; Stair v. Gilbert, 209 Ky. 243, 272 S.W. 732; Smith's Committee v. Forsythe, 90 S.W. 1075, 28 Ky.Law Rep. 1034; Garland v. Rice, 4 Ky.Law Rep. 254.

If the question here presented is one of general law and jurisprudence, it should be determined in the light of decisions of the Supreme Court of the United States; if not, it should be determined in accordance with the local rule of law on the subject.

■ Section 721 of the Revised Statutes (28 U.S.C.A. c. 18, § 725) provides the laws of the several states, except where the Constitution, treaties, or statutes of the United States otherwise require or provide, shall be regarded as rules of decision in trials at common law in the courts of the United States in cases where they apply. This section relates in express terms only to "trials at common law," and it is settled that such phrase does not include suits in equity, and therefore does not require of itself that in such suits the federal courts shall apply the laws of the several states. The general equity jurisdiction of the federal courts is the same as that which the court of chancery in England possesses, and is neither subject to limitation nor restrained by state legislation. Robinson v. Campbell, 3 Wheat. 212, 4 L.Ed. 372.

■ The equity jurisdiction of the courts of the United States is derived from the Constitution and laws of the United States. Their powers and rules of decision are the same in all the states; their practice is regulated by themselves and by rules established by the Supreme Court. Federal courts sitting in equity are not bound by state court decisions relating to remedies or modes of procedure. It is their duty to determine for themselves the general principles and usages of equity and apply those principles uniformly wherever sitting. Noonan v. Lee, 2 Black, 499, 509, 17 L.Ed. 278; Guffey v. Smith, 237 U.S. 101, 35 S.Ct. 526, 59 L.Ed. 856.

However, whether sitting in equity or at law, for the sake of harmony and to avoid confusion, the federal court should lean towards an agreement with the views of the state courts if the question to be decided is balanced with doubt.

■ Beginning with Swift v. Tyson, 16 Pet. 1, 10 L.Ed. 865, the rule has been fixed that federal courts are not bound by state decisions except those construing local statutes, relating to titles to property permanently located in the state, such as real property, and rules of a local nature. The expression "local rules" means those

promulgated in view of local physical conditions in the state, the character of the people, their peculiar customs, usages, and beliefs. Under the following decisions, I believe it my duty to follow the rule of the federal court in construing contracts executed by an insane person. Cole v. Pennsylvania Railroad Company (C.C.A.) 43 F.(2d) 953, 71 A.L.R. 1096; Hewlett v. Schadel (C.C.A.) 68 F.(2d) 502, 91 A.L.R. 743; Masden v. Travelers' Insurance Company (C.C.A.) 52 F.(2d) 75, 79 A.L.R. 469; Woolworth Company v. Wilson (C.C.A.) 74 F.(2d) 439, 98 A.L.R. 681; Black & White Taxicab & Transfer Company v. Brown & Yellow Taxicab & Transfer Company, 276 U.S. 518, 48 S.Ct. 404, 72 L.Ed. 681, 57 A.L.R. 426; Spinks v. Mutual Reserve Fund Life Association (C.C.) 137 F. 169; Sheppey v. Stevens (C.C.) 177 F. 484; Sim v. Edenborn, 242 U.S. 131, 136, 37 S.Ct. 36, 61 L.Ed. 199; Moore v. Backus (C.C.A.) 78 F.(2d) 571.

In Dexter v. Hall, supra, the Supreme Court, referring to contracts of an insane person, said:

"While he continues insane he cannot avoid it; and if, therefore, it is operative until avoided, the law affords a lunatic no protection against himself. Yet a lunatic, equally with an infant, is confessedly under the protection of courts of law as well as courts of equity. The contracts of the latter, it is true, are generally held to be only voidable (his power of attorney being an exception). Unlike a lunatic, he is not destitute of reason. He has mind, but it is immature, insufficient to justify his assuming a binding obligation. And he may deny or avoid his contract at any time, either during his minority or after he comes of age. This is for him a sufficient protection. But as a lunatic cannot avoid a contract, for want of mental capacity, he has no protection if his contract is only voidable."

If this be the correct statement of the law, there is no support for the conclusion that an insane person should be required to make restoration of property before instituting an action to have a court determine his rights, although it involves a trial on the identical thing for which he, in his confused state of mind, has accepted payment. On principle, the question of requiring restoration is not free from doubt. As has been said, such a practice may open up an avenue for fraud and im-

position. While a person is insane, he is not capable, in most instances, of retaining the fruits of his bargain so as to be able to make restoration, and if he is so far demented as to not know or recollect what the bargain was, the difficulty will be still greater.

As was said by the Supreme Court of Massachusetts, in the case of Gibson v. Soper, 6 Gray (72 Mass.) 279, 283, 66 Am.Dec. 414:

"And the same incapacity, which made the deed void, may have wasted the price, and rendered the restoration of the consideration impossible. For example: One buys of an insane man his farm; he gives a note, good only because it has a good indorser; the insane grantor omits to have the indorser notified, and loses its value. Must he, before he can recover the estate, put the grantee in statu quo? Upon the first impression, it may seem equitable that such restoration should be made, before the insane or infant grantor should recover his estate; but it is an impression which a little reflection removes. The law makes this very incapacity of parties their shield. In their weakness they find protection. It will not suffer those of mature age and sound mind to profit by that weakness."

Great confusion exists among the reported cases on the necessity of a releasor tendering or returning the consideration on repudiating a release of damages for personal injuries, procured from him by fraud, and under the Kentucky rule, where avoidance is sought on the ground of mental incapacity, a tender is required. Howell v. Louisville & Nashville Railroad Company, 251 Ky. 662, 65 S.W.(2d) 748; Louisville & Nashville Railroad Company v. McElroy, 100 Ky. 153, 37 S.W. 844.

However, there is one exception in the Kentucky cases. In Ross v. Oliver Bros. & Honeycutt, 152 Ky. 437, 446, 153 S.W. 756, 760, the court said:

"In reference to the suggestion of counsel for appellees that it was necessary appellant should return the money paid under the receipt before attacking its validity, we think the court fully protected the rights of appellee in directing the jury to give them credit by this amount on any sum they might find for appellant. If this money was paid, as the evidence for the appellees shows, in settlement of medical expenses incurred by appellant, appellees are entitled to be credited by the amount

of it on any judgment against them, and this is all."

In the case of Union Pacific Railroad Company v. Harris, 158 U.S. 326, 15 S.Ct. 843, 39 L.Ed. 1003, the Supreme Court approved the rule of allowing the sum paid in consideration of the release to be deducted from any sum awarded to the plaintiff.

In the case of Miles v. Lavender (C.C. A.) 10 F.(2d) 450, 454, the court said:

"It is argued that Lavender cannot maintain this action without having restored or offered to return the several payments which had been made to him by Miles. As a matter of course, if Lavender signed the release and agreement with full knowledge of the terms of it, and with the intention to make election, he could not avoid the effect thereof without restoring or tendering the moneys that were paid to him; but if he signed without knowledge and intention to enter into the release, and was deceived as to its contents, and signed believing it to be only a receipt for a check, his attitude became that of one not seeking to avoid a contract which he has made, but who shows that in truth and fact he never made such contract. Garcia v. California Truck Co., 183 Cal. 767, 192 P. 708. In the one instance, the instrument is voidable, and stands until annulled; in the other, there has been no contract, and the instrument signed may be disregarded in an action at law. L. R.A.1918F, 1073, notes."

The general rule is that a void contract may be disregarded by either party; a voidable contract cannot be, and it would seem, from any syllogism, that a contract of a person devoid of reason is without efficiency for any purpose.

The inferior federal courts are not in harmony on conditions precedent to contesting the validity of a release on the ground of fraud. The majority of them hold that a restoration or tender of the consideration is necessary, but in none of them was there an allegation such as we have here that the plaintiff's ward was, at the time of the execution of the release, wholly devoid of mentality. Mahr v. Union Pacific Railroad Company (C.C.A.) 170 F. 699.

It seems to me that the better and more humane rule to follow in this char-

acter of case would be to make due provision in the final decree, or by instruction to the jury, for the repayment of the sum received by plaintiff's ward, if the facts so justify, out of any sum recovered. Thackrah v. Haas, 119 U.S. 499, 7 S.Ct. 311, 30 L.Ed. 486.

The plaintiff prays for the recovery of $75,000 in this action. This is the only allegation in the petition that would indicate the sum paid to plaintiff's ward was grossly less than she was entitled to recover. The defendant, in its motion to dismiss, urges as one of the reasons therefor that there is no allegation that plaintiff's ward sustained any damage by reason of the settlement, but in view of the conclusion I have reached as to the release being void, it is not necessary for the plaintiff to allege an inadequate consideration.

It was also urged as a ground for dismissal that there is no showing that her counsel lacked authority to act for her in consenting to a dismissal of the case. If she were without mental power to act on her own behalf, a fortiori she could not select an agent. The law is uniform that an attorney has no authority to compromise his client's claim without specific directions to do so.

The motion to dismiss will be overruled.

I have heretofore entered an order transferring this cause to equity; that was an error. Under section 274b of the Judicial Code (28 U.S.C.A. c. 10, § 398), equitable defenses may be interposed by answer, plea, or replication in actions at law without the necessity of filing a bill on the equity side of the court. The defense that the release was void because of the mental condition of the plaintiff's ward is available in the action at law. Whitney Company v. Johnson (C.C.A.) 14 F.(2d) 24; Plews v. Burrage (C.C.A.) 274 F. 881; Wagner v. National Life Insurance Company (C.C.A.) 90 F. 395; Southern Railroad Company v. Clark (C.C.A.) 233 F. 900; United States v. Porter (D.C.) 9 F.(2d) 153; Murphey v. Springs & Co. (C.C.A.) 200 F. 372, 45 L.R.A.(N.S.) 539; Manchester Street Railway v. Barrett (C. C.A.) 265 F. 557.

The order transferring this case to equity will be set aside.